Mary C. Swift, appellant, v. Norwest
Bank-Omaha West, now known as
Wells Fargo, Inc., a banking
corporation, appellee.

___ N.W.2d ___

Filed April 5, 2013.    No. S-11-914.

1. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
2. ____: ____. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
3. **Constitutional Law: Appeal and Error.** A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

Michael J. O'Bradovich for appellant.

Scott D. Jochim and Robert M. Gonderinger, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., for appellee.

Robert J. Hallstrom, of Brandt, Horan, Hallstrom & Stilmock, for amicus curiae Nebraska Bankers Association, Inc.

Heavican, C.J., Wright, Connolly, McCormack, and Miller-Lerman, JJ., and Inbody, Chief Judge, and Pirtle, Judge.

Wright, J.

## NATURE OF CASE

On November 30, 2009, Mary C. Swift filed suit against Norwest Bank-Omaha West (Norwest), seeking judgment for principal and interest allegedly due and owing on a $15,000 certificate of deposit (CD) opened by her mother on July 19, 1984. Wells Fargo, Inc., is Norwest's successor in interest. The district court sustained Wells Fargo's motion for

summary judgment, finding that Swift's claims were barred by the applicable statute of limitations. See Neb. Rev. Stat. § 25-227 (Reissue 2008). Swift appeals from the district court's order overruling her motion to alter or amend the summary judgment.

## SCOPE OF REVIEW

[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Professional Mgmt*. *Midwest v. Lund Co*., 284 Neb. 777, 826 N.W.2d 225 (2012).

## FACTS

Swift's complaint alleged that her mother, Lucille C. Decker, opened a $15,000 CD on July 19, 1984, with Norwest. Swift had no knowledge of the CD at the time it was opened. The CD listed "Lucil[l]e C. Decker or Mary C. Swift" as the depositors. The CD specified that it would mature 9 months after the date it was issued and provided that Norwest would automatically renew the CD at maturity unless Decker or Swift notified Norwest otherwise. The annual rate of interest was 10.5 percent, and interest would be paid at withdrawal "by adding to principal." In the event that the CD was automatically renewed, the renewal interest rate would be the rate then in effect for a CD of the same term and amount. Decker and Swift were joint depositors with rights of survivorship.

Decker died intestate on December 18, 1991. Swift had no knowledge of any actions taken by Decker during her lifetime regarding the CD. In this action, filed in 2009, Swift claimed that the CD was "in existence on or after July 1, 2008," because she was in possession of the original CD. Swift claimed that she has been in exclusive possession of the CD since the early part of 1985.

Swift admitted that (1) for more than 7 years prior to the filing of this lawsuit, she did not receive any written communication from any depository institution regarding the CD; (2) she did not receive any written notice of renewal of the CD from

any depository institution; (3) she did not receive any written communication from any depository institution recognizing its obligation with respect to the CD; and (4) she did not report interest income from the CD on a federal or state income tax return.

After a Wells Fargo account has been closed for more than 7 years, Wells Fargo destroys the records related to the closed account in accordance with Neb. Rev. Stat. §§ 8-170 through 8-174 (Reissue 2012). Wells Fargo cannot close an account until the depositor has been paid in full, the funds are transferred to another account at the direction of the depositor, or the funds are paid to Nebraska's State Treasurer's unclaimed property division under state escheatment laws.

For more than 7 years prior to the commencing of this action, Wells Fargo did not send any written communication, renewal notice, Internal Revenue Service Form 1099 regarding interest income earned on the CD, or any other communication to Decker or Swift regarding the CD at issue. Wells Fargo had no record of remittance of any unpaid balance on the CD to Nebraska's State Treasurer.

The treasurer's unclaimed property division confirmed that on or about December 4, 1995, Wells Fargo reportedly paid $117.37 to the treasurer, identified as a "'CD interest check'" payable to Swift and Decker. The treasurer published notice of the CD interest check in the Omaha World-Herald on March 1, 1996. Pursuant to a claim submitted by Swift 13 years later in August 2009, the treasurer paid the amount of $117.37 to Swift on or about August 24, 2009. This was the only information that the treasurer's office had with respect to Decker or Swift.

Wells Fargo allows account holders to access their money without having to present the original CD. It requires the account holder to sign a form confirming that he or she is the owner of the account and that he or she will indemnify the bank against any loss, damage, claim, or expense resulting from payment of the funds. Wells Fargo has no record of any such form signed by Decker or Swift, because any record had been destroyed pursuant to its record retention policy.

In 2009, Swift contacted Wells Fargo and requested a withdrawal of the CD funds. Because Wells Fargo had no record of the CD, it denied Swift's request. Swift then brought this action on November 30, 2009. She alleged that the CD opened in 1984 was to be renewed on a regular basis and that she is now due the money owing pursuant to such CD from the date it was opened.

In its defense, Wells Fargo asserted that the action was barred by the applicable statute of limitations. The district court determined the relevant statute of limitations was § 25-227, which provides that the holder of a CD has 7 years from the maturity date or 1 year from July 1, 2008, whichever is later, to commence an action for payment of the CD.

The district court found that Swift's action was barred by § 25-227 and sustained Wells Fargo's motion for summary judgment.

### ASSIGNMENTS OF ERROR

Swift claims, summarized and restated, that the district court erred in sustaining Wells Fargo's motion for summary judgment and in overruling Swift's motion to alter or amend the judgment.

### ANALYSIS

[2] The issue presented is whether Swift's cause of action is time barred by § 25-227. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Professional Mgmt. Midwest v. Lund Co.*, 284 Neb. 777, 826 N.W.2d 225 (2012).

The following facts are undisputed: Swift did not commence an action against Wells Fargo on the CD within 7 years after April 19, 1985, which was the maturity date of the CD. For more than 7 years prior to commencing this action, Swift did not receive any written communication from a depository institution regarding the CD. She did not receive written notice of renewal of the CD from any depository institution. She did not

receive any written communication from a depository institution recognizing its obligation with respect to the CD. She did not report interest income from the CD on a federal or state income tax return. Swift did not file this action within 1 year after July 1, 2008.

Wells Fargo is a federally chartered financial institution located in Nebraska and is authorized to maintain CD's. We conclude Wells Fargo is a depository institution as defined by § 25-227(1)(c).

Decker died intestate in 1991. Swift alleges that the original CD issued on July 19, 1984, has been in her possession since 1985 and that Decker never reclaimed the CD before her death. Swift asserts that because the provisions of the CD allowed for automatic renewal and the accrued interest was added to and made a part of the principal, the CD would mature every 9 months, when it would automatically be renewed for another 9 months.

We must first consider whether the CD at issue was a negotiable instrument and therefore subject to Nebraska's Uniform Commercial Code, specifically Neb. U.C.C. § 3-118(e) (Cum. Supp. 2012).

Article 3 of the Uniform Commercial Code applies to negotiable instruments. Neb. U.C.C. § 3-102(a) (Reissue 2001).

> "[N]egotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . . .
>
> . . . .
>
> (d) A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or

order is not negotiable or is not an instrument governed by this article.

Neb. U.C.C. § 3-104 (Cum. Supp. 2012).

Section 25-227(2) provides:

Subject to subsection (3) of this section, an action to enforce the obligation of a depository institution to pay all or part of the balance of a certificate of deposit shall be commenced by the earlier of:

(a) The time that an action to enforce an obligation under subsection (e) of section 3-118, Uniform Commercial Code, must be commenced if the certificate of deposit is subject to such section; or

(b) Seven years after the later of:

(i) The maturity date of the certificate of deposit;

(ii) The due date of the certificate of deposit indicated in the depository institution's last written notice of renewal of the certificate of deposit, if any;

(iii) The date of the last written communication from the depository institution recognizing the depository institution's obligation with respect to the certificate of deposit; or

(iv) The last day of the taxable year for which a person identified in the certificate of deposit last reported interest income earned on the certificate of deposit on a federal or state income tax return.

The CD in question was not payable to bearer and also stated that "[m]y certificate is nontransferable except when: . . . pledged as collateral for a loan; . . . transferred by operation of law; or . . . transferred on your books or records." We therefore conclude that the CD was not a negotiable instrument subject to article 3 of Nebraska's Uniform Commercial Code.

The CD provided that it would mature 9 months after the date issued. It was issued July 19, 1984, and therefore matured 9 months later on April 19, 1985. Swift argues that because the CD specified that it would automatically renew unless Norwest was told otherwise, the maturity date would automatically be extended every 9 months. We disagree. "Maturity date" means the time specified in an account when a CD is first payable, without taking into account any agreement regarding

renewals. § 25-227(1)(d). The CD matured on April 19, 1985, and pursuant to § 25-227(2)(b)(i), Swift was required to file an action no later than April 19, 1992 (7 years after the maturity date of the CD). This action was commenced over 24 years from the maturity date of the CD.

Section 25-227(3) provides:

> Notwithstanding subsection (2) of this section, an action to enforce the obligation of a depository institution to pay all or part of the balance of an automatically renewing certificate of deposit in existence on July 1, 2008, shall be commenced by the later of:
>
>> (a) Seven years after the later of:
>> (i) The maturity date of the certificate of deposit;
>> . . . .
>> (b) One year after July 1, 2008.

Swift had to commence her action either 7 years after the maturity date of the CD or 1 year after July 1, 2008. Swift did not commence her action until November 30, 2009, and therefore, her claims are barred by § 25-227.

[3] In Swift's motion to alter or amend the judgment, she argued that § 25-227 was unconstitutional because it inhibited parties from freely contracting, in violation of Neb. Const. art. I, § 16. This claim was not raised prior to the entry of summary judgment in favor of Wells Fargo. Because the constitutional issue was not presented to the district court prior to the summary judgment, we decline to consider it on appeal. A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. *Shepherd v. Chambers*, 281 Neb. 57, 794 N.W.2d 678 (2011).

## CONCLUSION

Swift's claims are barred by § 25-227, and the district court did not err in entering summary judgment for Wells Fargo. For the reasons set forth herein, the judgment of the district court is affirmed.

AFFIRMED.

STEPHAN and CASSEL, JJ., not participating.